WESTERGAARD BERG-JOHNSEN CO. *v.* UNITED STATES (No. 4211)[1]
BATA SHOE CO. *v.* UNITED STATES (No. 4212)[1]

[1] C. A. D. 86.

208

United States Court of Customs and Patent Appeals, December 26, 1939

*Allan R. Brown* for appellants.

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument October 9, 1939, by Mr. Brown and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON
Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

These cases are before us by appeals from judgments of the United States Customs Court, First Division, overruling protests of the respective importers by which they sued the United States for the recovery of moneys collected from them as customs duties by the Collector of Customs at the port of New York.

In suit 4211 the merchandise consisted of a certain type of fish; in suit 4212, of a certain type of shoes.

The principal issue in both cases is one of law and is the same in both. So, the difference in character of the merchandise involved in the respective cases is not of importance. The same counsel represented both appellants, filing a consolidated brief and making oral argument discussing both cases together. The Government filed separate briefs, the principal one being in suit 4212. There are separate records, however, and the cases were separately heard by the trial court and disposed of in separate decisions. Suit 4212 was first decided by it, the date of its final decision being October 17, 1938. The decision in suit 4211 was rendered December 6, 1938. The latter decision merely stated, in effect, that the decision in the former was controlling. We shall follow the same course and render separate decisions, giving attention first to suit 4212. It will be found, however, that in some quotations which we make from the briefs and record both cases are referred to.

The general issue in both cases relates to the validity of increases in duties proclaimed by Presidential proclamations issued under section 336, the so-called flexible tariff provision, of the Tariff Act of 1930.

*Suit No. 4212.*

In this case there was an opinion by McClelland, Presiding Judge, concurred in by Sullivan, Judge, and a specially concurring opinion by Brown, Judge. See 1 C. D. 45. 1 Cust. Court Rep. 189.

The merchandise consisted of shoes, specifically of shoes made wholly or in chief value of leather, being the type commonly known as "McKay sewed," or "McKay stitched," shoes. It was classified under paragraph 1530 (e) of the Tariff Act of 1930, the pertinent portion of which reads:

(e) Boots, shoes, or other footwear * * * made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem; * * *.

In the appraiser's answer to the protest it was recited that the shoes were "made wholly or in chief value of leather, not specially provided for, sewed or stitched by the process or method known as McKay."

Hence they were returned for, and assessed with, duty at 30 per centum ad valorem by reason of a proclamation of the President of the United States, T. D. 45311, 60 Treas. Dec. 1014, issued December 2, 1931. All the importations involved in this case seem to have been made in 1932.

The proclamation of the President is conventional in form. It recites that an investigation was made by the United States Tariff Commission after notice that a hearing would be held; that the commission had reported the results of its investigation and its findings with respect to differences in costs of production between the domestically made and foreign made shoes to the President, together with the decrease and increase in the rates of duty expressly fixed by statute found by it to be necessary to equalize such costs of production, and that "in the judgment of the President" such rates of duty were shown by the commission's investigation to be necessary for such purpose. As to one class of shoes, not here at issue, a decrease of 10 per centum ad valorem in the rate of duty was approved and proclaimed, but as to the McKay type here involved an increase in rate from 20 per centum ad valorem to 30 per centum ad valorem was approved and proclaimed.

The controversy embraces 21 entries covered by a single protest, No. 621946–G/37668, filed within the statutory time following the collector's several liquidations, which protest was subsequently amended.

For clarity we have rearranged the text of the protest by including parts taken from the amendment in brackets. So arranged, the allegations here pertinent read:

* * * it is further and alternatively claimed that any order, finding, or proclamation, including the Presidential Proclamation * * * authorizing or purporting to authorize the imposition of any higher duty than that provided in said Par. 1530 (e) or in effect changing the classification provided in said Par. 1530 (e), is illegal, null and void. It is not warranted by Section 336 or other provision of law. [The duty is not expressly fixed by statute within the meaning of said section 336.] The duty fixed in said Par. 1530 (e) equalizes the difference in cost of production, in the United States and in the principal competing country, of the merchandise covered by the classifications of said Par. 1530 (e). [The investigation, hearing, finding and report of the Tariff Commission are based on a wrong principle, contrary to law, illegal, null and void. * * *] In any event any statute purporting to authorize the issuance of any order, finding, proclamation, or other act raising or purporting to raise any duty or changing or purporting to change any classification fixed in said Par. 1530 (e) is illegal, unconstitutional, null and void. It is unconstitutional in that the enactment of such provision is beyond the powers granted to Congress by the Constitution of the United States, in that it constitutes the taking of the property of the citizen without due process of law and in that it constitutes an unlawful delegation of the taxing power. You should reliquidate in accordance with the above claims.

As a matter of convenience, paragraphs (a) and (c) of section 336 of the Tariff Act of 1930 are quoted:

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

Before the trial court appellant moved that the report of the Tariff Commission be incorporated in the record as evidence. This motion was opposed by the Government and denied by the court. Such denial is assigned as error.

In making the objection counsel for the Government said:

True, it [the report] is a public document. It can be referred to in any argument, but it is certainly not a part of the record, as evidence of anything.

The report, or a printed copy thereof, was marked for identification as Exhibit 1, and as such is bound with the record, and the brief for the Government before us concedes that the court may take judicial notice of it, and quotes excerpts from it.

In the case of *United States* v. *Best & Co., Inc., Bonwit Teller & Co.*, 24 C. C. P. A. (Customs) 220, T. D. 48667, this court held that it might take judicial notice of a report of the commission not introduced or offered in evidence, citing numerous cases, including the decision of the Supreme Court in the case of *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294.

We are of the opinion that we may take judicial notice of the report in the instant case for all purposes incident to the issues that are

involved without it having been introduced as evidence. Hence the denial of its admission "as evidence" by the trial court did not harm appellant.

One question is presented in the instant case which is not involved in the companion case, suit 4211, which properly may be disposed of at this point.

The report of the commission states:

The commission instituted this investigation on June 20, and on July 11, 1930, in compliance with Senate Resolution No. 295, dated June 18, 1930, and Senate Resolution No. 313, passed on July 3, 1930.

Concerning Senate Resolution 295, appellant points out that it was *offered* in the Senate on June 17, 1930, "the day before the Tariff Act of 1930 became operative," and argues, in substance, that because of its date of introduction it originally had no statutory authority, was void *ab initio*, and that "its invalidity is not cured by its passage on June 18, 1930." Hence it is urged there was no authority for the commission's investigation, it being claimed that Senate Resolution 313 had no relevancy to the case at bar.

It may be said that Senate Resolution 313, passed July 3, 1930, did specifically name "boots" and "shoes" as subjects for investigation along with numerous other articles. So, appellant is in error as to its relevancy here, but this aside we are not impressed with appellant's argument as to the invalidity of Senate Resolution 295 based merely upon the date of its introduction.

It was provided in the Tariff Act of 1930 that, with certain exceptions not here material, it should take effect "on the day following the date of its enactment." Its enactment was concluded by the approval of the President on June 17, 1930, "at 12.59 p. m." Accordingly, it became effective at 12:01 a. m. June 18, 1930, and was in effect at the time of the passage of Senate Resolution 295. The exact hour when that resolution was introduced on June 17th is not ascertainable. It appears from the Congressional Record, Vol. 72, 71st Cong. 2nd Session, Part 10, page 10905, that on June 16th the Senate adjourned to the hour of 12 o'clock meridian June 17th. As introduced, Senate Resolution 295 recited the passage and approval of the tariff act. So, the obvious inference is that it had been *enacted* (although not in force) before the resolution was introduced. However this may have been, we think the date of its passage is controlling, and that under the facts appearing the date of introduction is immaterial, and appellant's assignment of error on that point is overruled.

One of the first questions presented, common to both cases, relates to what appellants designate as "matters of practice." Motions were made in both cases for a hearing in Washington for the purpose, as stated in the motions and brief, of showing "that the President never

had before him the record of the investigations relied on as the bases of the proclamations." These motions were denied, and importers then moved commissions to issue to take the testimony of certain members of the Tariff Commission, and in suit 4211, that of the President of the United States. In both cases the motions stated:

\* \* \* The testimony desired is as follows:

1. What facts developed in the investigation of the Tariff Commission were submitted by said commission to the President.

2. Whether all the facts before the Tariff Commission were submitted by said commission to the President.

3. What facts were developed in the investigation of the Tariff Commission.

4. The nature of the hearing before the Tariff Commission.

It is desired that these facts be adduced for the purpose of proving:

1. That the President did not examine all the facts before the Tariff Commission as the basis for his proclamation;

2. That the hearing held by the Tariff Commission was not in accordance with the requirements of the law;

3. That the Tariff Commission proceeded upon a wrong principle of law;

4. That the duty upon the merchandise under consideration was not expressly fixed by statute within the meaning of the law;

5. That the Tariff Commission and the President made an arbitrary segregation of merchandise the duty upon which was not expressly fixed by statute, and advanced the rates of duty thereon contrary to law.

6. That the action of the commission did not conform to the public notice of hearing within the meaning of the law;

7. That the actions of the President and United States Tariff Commission are illegal, null and void.

These motions also were denied and error is assigned as to both the denial of the hearings in Washington and the denial of the commissions to take testimony. In support of such assignments, appellants cite the decision of this court in the case of *David L. Moss Co., Inc.,* v. *United States,* 26 C. C. P. A. (Customs) 381, 103 F. (2d) 395, C. A. D. 45, rendered March 27, 1939, subsequent to the decision of the trial court in the instant case.

In the *Moss & Co.* case, *supra,* which involved dried egg albumen, the report of the Tariff Commission, upon which the proclamation of the President was predicated, was offered in evidence by the importer and admitted by consent. The importer there also offered in evidence a copy of the transcript of the testimony taken by the Tariff Commission during the course of its investigation, together with depositions of witnesses submitted to the commission at that time and certain documentary exhibits considered by it. These were embraced in Exhibits 2, 3, and 4, and, at first, were admitted by the trial court, but in a subsequent ruling were excluded. They were filed for identification and transmitted to this court with the official record.

The importer there contended that the report of the commission disclosed upon its face that there was no dried egg albumen industry

in the United States at the time of the commission's investigation and, hence, that there was no such domestic article, the cost of production of which could be ascertained in conformity with the provisions of section 336, *supra*. It contended further that if the record of the commission's investigation were looked to, it too would show the absence of such industry. It was the contention of the Government, and it was so held, in effect, by the trial court, that the court had no authority to pass upon the question of whether the Tariff Commission had jurisdiction to conduct the investigation. A majority of this court held that it (and, of course, this meant the Customs Court as well) did have such authority, saying, as expressed, in substance, in the syllabus, that while it is not the function of the court to weigh the evidence and determine the facts, it might go behind the report of the commission to determine whether the finding of the President and the commission that dried egg albumen was a "domestic article" within the meaning of those words, as expressed in section 336, was supported by any substantial evidence. In conformity with that holding, the majority there looked to and considered the exhibits which had been offered in evidence and filed for identification.

It is obvious that the situation existing here differs in material respects from that before us in the *Moss & Co.* case, *supra*. In that case no question was raised as to what matters developed by the commission's investigation were submitted to the President. There was nothing there to show that the President had before him anything other than the commission's report, which included a summary, nor was it suggested that anything other than this was required to be submitted to him. Appellant there procured a copy of the transcript of the hearing held by the commission, together with other matters, all certified by the commission to be correct, and offered those in evidence, as has been stated. The purpose of such offer was to show that those matters, if proper to be looked to, supported appellant's contention that the report itself disclosed the absence of any domestic dried egg albumen industry, and no question as to whether such matters were, or should have been, submitted to the President was involved.

In the instant case the jurisdiction of the commission to make the investigations upon which the Presidential proclamations were based is not challenged (except, as to the shoes, upon the ground of the date of introduction of Senate Resolution 295 above passed upon) and the brief for appellants states:

It must be emphasized that in the cases at bar there is no question as to the correctness of the finding of the Tariff Commission or the correctness of the Presidential proclamation. The sole issue is as to their *legality*. It is claimed that there was no finding and no proclamation *as contemplated by law*.

Appellants here did not, as was done in the *Moss & Co.* case, *supra*, procure certified copies of the transcripts of the respective records and offer them in evidence, but sought to take the testimony of the Tariff Commission (and, as stated, of the President himself in the fish case, suit 4211) upon the matters and for the purposes stated in the motions above quoted.

We are unable to concur in the contention of counsel for appellants that the *Moss & Co.* case, *supra*, is controlling of the issue under discussion, nor are we able to agree that appellants had the right to take the testimony sought for the purpose stated in the notices.

In the first place, the protests do not contain any intimation that all the facts found by the commission were not placed before the respective Presidents who issued the respective proclamations. Counsel for appellants, it seems to us, sought to investigate the commission's investigations long after those investigations had been concluded and their purposes consummated, although in the brief before us, as quoted *supra*, neither the *correctness* of the commission's findings nor the *correctness* of the proclamations is questioned. It is said simply that the sole issue is as to their legality, and the brief states as point II the following:

The proclamations of the President relied on herein by the Collector are illegal, null and void because the President never had before him the facts of the respective investigations by the Tariff Commission even though said investigations were legal.

As has been stated, the protests contained no allegations conforming to this contention, but, this fact aside, we do not regard it as well taken.

There is nothing in the statute which requires that the testimony and other matters received by the commission in one of these investigations be placed before the President, and certainly no provision which requires a showing that the President has read such testimony and other matters. The pertinent provision in paragraph (a) of section 336, *supra*, is:

The commission shall report to the President the *results* of the investigation and its *findings* with respect to such differences in costs of production. If the commission *finds* it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production * * * the commission shall specify in its *report* such increases or decreases in rates of duty * * * as it finds shown by the investigation to be necessary to equalize such differences. [Italics ours.]

The pertinent portion of paragraph (c) of the section is that which provides for the President, by proclamation, approving the rates of duty "specified in any report of the commission * * *, if in his judgment such rates of duty * * * are shown by such investigation of the commission to be necessary to equalize such differences in costs of production."

The report of the commission in the instant case complies with the terms of the statute and it embraces a summary of the information obtained in the investigation. Upon its face the report forms a legal basis for the President's proclamation, which, upon its face, conforms to the statute.

Certainly, no court has ever construed the statute to mean that, as a prerequisite to a valid proclamation, the President must be shown to have had before him and to have examined not only the report of the commission but all its records incident to the investigation. An investigation by the commission must be had, and the President may, when he desires, require any matters developed in such investigation to be placed before him but, in our view, he is not required to go beyond the report itself, and the validity of the report and the proclamation may not be inquired into in the manner here attempted by appellants. The reasoning of many cases is to the contrary. See *Union Fork & Hoe Co.* v. *United States*, 24 C. C. P. A. (Customs) 199, T. D. 48656, and cases therein cited.

Another question raised by appellants relates to the sufficiency of the notice of the intended investigation given by the commission, it being said with respect to the case involving shoes that the notice covered boots and shoes broadly "and is not related to certain classes of boots and shoes or the only class of boots and shoes upon which the rate of duty was raised, to wit, McKay sewed boots and shoes * * *," and so it is claimed that the notice was not reasonable within the contemplation of the statute, the case of *Carl Zeiss, Inc.* v. *United States*, 23 C. C. P. A. (Customs), 7, T. D. 47654, being cited.

The distinction between the notice involved in that case and the notice involved in this case will be obvious to those who study the two. In that case notice was given that the investigation would relate to a specific class of optical instruments, and it developed that the commission extended its investigation to another class which, while included in the general language of the same paragraph, was different from the class to which the notice specifically applied.

In the instant case the notice was general in character. It stated that an investigation would be had "* * * with respect to * * * the articles described in paragraph 1530 (e) of Title 1 of said tariff act [of 1930], namely, boots and shoes, wholly or in chief value of leather * * *." See pamphlet copy of weekly TREASURY DECISIONS, issued August 28, 1930. The shoes here involved are admittedly wholly or in chief value of leather. In making them there was applied a stitching process called the McKay process. This process has been long known to manufacturers of, and dealers in, shoes. Summary of Tariff Information 1929, Vol. 2, page 2427, states the process tersely, saying that by it "the upper, inner sole and outsole are all sewed together at one operation." Other processes of making shoes of leather are described in the summary.

Various kinds of shoes are included in paragraph 1530 (e) of the Tariff Act of 1930, and the report of the commission indicates that inquiries were directed to different kinds, but specific findings were made as to only two kinds, viz, (1) McKay stitched leather shoes and (2) what the report describes as turned shoes, the latter being also composed wholly or in chief value of leather. Since the shoes here at issue were wholly or in chief value of leather, and since the notice was broad enough to cover all shoes "wholly or in chief value of leather" we hold that it was sufficient so far as the issue here presented is concerned. See *Lord & Taylor* v. *United States*, 26 C. C. P. A. (Customs) 151, C. A. D. 9.

Another allegation of appellants is, in substance, that the investigations made by the commission were invalid because they did not cover merchandise on which the rate of duty is *"expressly fixed by statute"* [italics quoted]. The argument upon this allegation seems to be based upon the fact that there was a change in language in section 336 (a) of the Tariff Act of 1930, *supra*, from that used in section 315 (a) of the Tariff Act of 1922. The latter named section authorized "increases or decreases in any rate of duty provided in this Act," while section 336 (a), *supra*, authorizes "increases or decreases in rates of duty expressly fixed by statute," and, as we understand the position of counsel for appellants it is that the investigation was invalid because all shoes wholly or in chief value of leather were not embraced therein, or at least were not embraced in the report.

With respect to this contention appellants cite the case of *United States* v. *American Brown Boveri Electric Corporation*, 17 C. C. P. A. (Customs) 329, T. D. 43776, where we said:

A change in the language of a statute has always been construed by us to import a change in meaning unless the contrary is made plainly to appear in other ways. No principle is better settled in our court than this.

Of course, the rule is well settled, but we fail to see wherein it is applicable here to bring about the result for which appellants contend, which would amount to holding, as stated in the decision of the trial court, that changes in rates are authorized by section 336, *supra*, only as to articles provided for *eo nomine*. The words "expressly fixed by statute" relate to the rate of duty. Paragraph 1530 (e) expressly fixed a rate of 20 per centum ad valorem upon shoes "wholly or in chief value of leather," which covered the type here involved. We think the contention is without merit.

As indicated in the protest, a question is raised respecting the constitutionality of section 336, *supra*. In the case of *United States* v. *Sears, Roebuck & Co.*, 20 C. C. P. A. (Customs) 295, T. D. 46086, this question was fully discussed, and the constitutionality of the section sustained. It is unnecessary to repeat that discussion here.

The judgment of the United States Customs Court is *affirmed*.

**218**

*Suit No. 4211*

The merchandise in this case consisted of canned anchovies apparently imported in 1935. It was classified under paragraph 718 (a) of the Tariff Act of 1930 and assessed with duty at the rate of 44 per centum ad valorem (instead of 30 per centum ad valorem, the rate expressly fixed in the paragraph) by reason of a Presidential proclamation. T. D. 46795, 64 Treas. Dec. 708, issued December 14, 1933.

In view of the fact that, with the exception of one contention peculiar to suit 4212, the same questions are involved here that were there involved and decided, we need not go into the details of this case.

The judgment of the United States Customs Court is *affirmed*.